UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

JAMES RAYNOR (Plaintiff)

V.

* STATE OF CONNECTICUT (Defendant)

* STATE AGENCY JUDICIAL MARSHAL SERVICES (DF)

* ROLLIN COOK Comm. OF D.O.C (Defendant)

And/or His Successor

* WARDEN Buttricks (Defendant)

And/or His Successor

* District Manager William Mulligan (Defendant)

And/or His Successor

* MARCO Pugliares Judicial Marshal (Defendant)

* Percy Carr Judicial Marshal (Defendant)

CASE No:

DATE: 8-29-22 (August)

TRIAL BY JUDGE REQUESTED

## Jurisdictional And Venue

#1) This is a Civil Action arised under section 1983, 1985, 1986 and 1988 of the title 42 of the U.S.C. and the Eighth and Fourteenth Amendment of the United States Constitution, Jurisdiction is Founded upon 28 U.S.C § 1331, 1343, 2201 and 2202, And the aforementioned statutory and Constitutional Provisions.

#2) Plaintiff, James Raynor, Further invokes the courts Supplemental Jurisdiction to Law Sounding in Tort pursaunt to 28 U.S.C § 1367. The District Court of Connecticut is an appropriate Venue Under 28 U.S.C. § 1391 (b)(2) Because it is where the events giving rise to the Plaintiff Claims Occurred: He seeks to file his notice of claim to this court.

(PAGE # 1)

#3) This Action is to recover Damages Suffered by the plaintiff.

#4) Plaintiff, MR. James Raynor, is A Connecticut Inmate who is currently residing at the Garner Correctional Institution, located at 50 Nunnawauk Rd. Newtown, CT. 06470

#5) Plaintiff, is/was At All Times mentioned in this complaint A resident of the State of Connecticut Within the Jurisdiction District of Connecticut And within the territorial Jurisdiction of this Court.

#6) During All times mentioned In this Complaint, The Defendants all acted Under color of Law, that is under color of the Constitution, statures, laws, rules, regulations procedures and usages of the State of Connecticut, And the United States of America.

#7) During all times mentioned in this Complaint, All of the defendants, and each of them in their Officical, and Individual capacities, did willfully deprive the plaintiff of his rights that are Secured to him under the Constitution of the United States.

#8) Plaintiff, states that each defendant had the duty, responsibility and opportunity to protect him from unreasonable risk and harm while in their Care, custody and control, failing to use reasonable care breeching it's duty to keep the plaintiff safe and protected thereby Causing plaintiff servere injuries to his physical health and psychological state, with intentional infliction of emotional distress, And negligence.

(Page # 2)

#9) Plaintiff, provides this statement as a "Just Claim" pursuant to Connecticut General Statute section 4-141; which in equity and Justice the state should pay, provided the State has caused damage or Injury where in plaintiff ask this Court to exercise it's Supplemental Jurisdiction due to the following facts laid out in this complaint, plaintiff also brings Claims of Negligence against the State of Connecticut and its employees pursuant to connecticut General statute section 52-556 grants any person Injured in person or property through the negligence of any state official or employee when operating a Motor vehicle owned and Insured by the state against personal Injuries or property damage shall have a right of action against the state to recover damages for such injury; and deliberate Indifference.

#10) At the time of Plaintiff's Injuries he was housed at the Cheshire Correctional Institution, 900 Highland Avenue, Cheshire, Connecticut 06410

## STATEMENT OF FACTS

#11) On tuesday, september 17, 2019 plaintiff James Raynor was a Incarcerated person housed at the Cheshire correctional Institution. At or around 6:30 A.m. plaintiff was transported from Cheshire by the Department of Corrections transport unit (D.o.c./C.Tm) to walker Correctional Facility where he was scheduled for pick up to be transported To Hartford Superior Court given over to the Custody of State Judicial Marshal Services.

#12) At or around 9:15 A.m. The state Judicial Marshal service employees arrived to pick up plaintiff and ten other Incarcerated persons scheduled for court.

(PAGE # 3)

They were then searched for contraband by "Jm" (Judical-Marshal) MR. Carr, "Jm" carr then shackled plaintiff by his ankles and hand cuffed him wrist to wrist with another prisoner named MR. Carlos Carmona.

#13)    All prisoners were then lined up and escorted out of the Walker Correctional holding cells into the Walker Correctional Sallay fort garage. Plaintiff was walking slightly behind, off-set to the side of prisoner Carmona as we all approached the Judicial Marshals vehicle.

#14)    Plaintiff and MR. Carmona were the First passengers to approach the back of the "Jms" truck, "Jm" Pugliares begin to operate the vehicle by opening the doors to the back of their truck preparing to then operate the steps to the back of the truck to load plaintiff and other passengers into their transport vehicle.

#15)    "Jm" marco Pugliares then pulled the steps to the back of the truck letting them freely swing open slaming into they were fully extended, Pieces of rusted metal dropped from the stairs that were attached to the truck, it was both visually seen by "Jm" Pugliares, carr, and the several passenger and was verbally commented on about the truck being old and broken.

#16)    "Jm's" disregarded the comments about the rusted steps, they did not check the steps for its stability and continued

(Page # 4)

to tell the passengers to proceed in getting into the back of the truck by utilizing the steps that appeared to be unsafe, or in good operating condition.

#17) "Jm" Pugliares then stepped to the left of the doors and steps of the vehicle as to aid the passengers on to the truck.

#18) MR. Carmona was the first passenger to step onto the steps to the back of the marshal's truck slightly being held by his arm while being guided up the stairs by "Jm" Pugliares and the plaintiff trailing behind begin to also utilized the steps.

#19) When MR. Carmon reached the base of the truck and still standing on a portion of the stairs, plaintiff was also on the stairs behind MR. Carmona when it was room enough to proceed.

#20) Plaintiff then hears a loud snap as the steps to the truck completely broke off the back of the truck while both MR. Carmona and plaintiff was on the steps.

#21) Simultaneously as the stairs quickly broke off the truck MR. Carmona was caught and held up by "Jm" pugliares preventing him from falling completely onto plaintiff. (Please see preserved video footage Video # WALK – VP–19–312 and Judicial Marshal Incident report).

(Page #5)

#22.)    All in one quick motion the steps broke off, detaching
it self from the truck, folding closed downward out the
air from the top base step (Portion) that was attached or
weldded to the back of the truck toward the ground
hitting the plaintiff directly in this right knee, sliding
down part of his shin and landing partly on his foot, not
fully protected because plaintiff was attached to another
person unable to get out of the way while "Jm" attempted
to minimize the harm by holding mr. Carmona plaintiff
still suffered injury –

#23)    Rust and rotted pieces of metal flew into the air and all
over the ground surranding the broken steps from the back
of the truck and from the stairs hitting the ground so hard
plaintiff also got rust in his mouth (rust dust) due to
the faulty steps.

#24)    After mr. Carmona and plaintiff were secure and lifted
up. "Jm" Percy Carr proceeded to flip over the steps using
his foot turnining the broken steps into a prop, he tryed
testing the broken stair case for its sturdiness by putting
one foot on the base part, the heaviest part of the steps
that attacked to the truck checking if it would toggle over
or not. Please also see video footage Video # WALK –
VP-19-312                   and or inquire about all camera angles.

(page # 6)

#25) Once "Jim" Carr in his own opinion observed that the steps were sturdy enough he ordered Mr. Carmona, plaintiff and the other passengers to step on to the broken steps to enter into the back of the truck.

#26) Plaintiff along with the other prison passengers followed the orders of "Jim" Carr and utilized the prop steps and entered into the marshals truck to proceed being transported to court.

#27) While waiting in the back of the truck, plaintiff began to feel pain in his lower knee, heat and swelling. Upon leaving the sally port area plaintiff got the marshals attention by knocking on the inside wall of the truck that connected the marshals' driving station to the back passenger-cargo area.

#28) Plaintiff communicated to the marshals that he was uncertain of their protocol when it came to injured persons, but before they leave to court that he wishes to be seen by medical personel because he was starting to experience pain.

#29) "Jims" tone of voice seemed to be upset when they responded to plaintiff's request for medical evaluation, but they told plaintiff to hang tight, that they would swing around to allow him to be seen by medical staff.

(page #7)

#30.)  "Jm³" pulled out of the sally port and circled around re-entering the garage sallyport into the opposite side so plaintiff can be seen by medical.

# 31)  Plaintiff was then Unloaded off the back of the truck, being mocked and ridiculed by walkers correctional officers that he was faking his injuries as an inmate lying wanting to now seak medical attention, that he was ful of shit, plaintiff begin to experience anger and shame, because he was not being taken seriously and was being ignored when he requested that correctional staff take photos of his Injures and how it was not his fault for getting hurt, to look at the rust and broken steps to the truck.

#32)  Plaintiff was escorted to A holding cell, where he he was still told to walk on his Injury where he had to wait for A nurse, After an extended period of time plaintiff was then escorted to medical and told, walk to the medical unit on his injuries who requested a wheel chair or cruches, and was told by correctional officers that his Injuries cant be that bad because he was not screaming and hollaring in pain. Upon meeting the nurse and telling her what took place she to did not take plaintiff's Injuries seriously.

(page # 8)

#33)    Plaintiff insisted that the nurse take photos of his right leg injuries, to be put in his medical file "report" as to the incident because he was not housed at the walker facility he also requested copies of his incident report. He was told that the incident report will be e-mailed to the cheshire correctional medical office.

#34)    Plaintiff only had his knee looked at as he also explained to the nurse that he tweeked his lower back from the quick jerk reaction from the truck being attached to another inmate and re injured his left ankle from a prior injury of a slip and fall down some stairs.

#35)    Plaintiff was told by the nurse if he can walk on his feet that he would be fine, that inmates are always lying about their injuries along with more of her sarcastic remarks plaintiff got the idea that because he was an inmate, he is assumed to be a liar and not to be taken seriously and would not receive professional and proper respect and medical attention.

#36)    As plaintiff stated his own assessment of knowing his body and when he is experiencing pain he was then given some ice for the swelling that was visual in his knee, the nurse later observed and gave him some I B profren for pain and told him to leave.

#37)    Plaintiff was then escorted back to a holding cell and forced to wait over 8 hours (eight) to be picked up by D.o.O.C. CTU Transport. Plaintiff suffered pain, developed migrane headache feeling discriminated against. He still did not receive wheel chair or crutches.
(Page #9)

#38) Plaintiff asked for additional Ice for his Knee after the one he was given has melted, he requested more IB profern for the pain and his headache and was told that he cannot be given any more ice or IB profern, He explained that you can be given more after 3-4 hours. Plaintiff waited for more then Seven hours-and still did not receive IB profern

#39) At no time did any of the Department of Corrections officers, medical staff nor any of the two Judicial marshals present at the time of this Incident take any pictures or recordings of plaintiff's Injuries, nor did they take photos requested by plaintiff to perserve the scene of the Incident and the broken truck end steps where they lay rusted and detatched from their vehicle in the sally port, nor did they Interview the other Inmate passengers and take their witness statements about plaintiff's Injuries and how it all occured.

#40) Plaintiff experiences chronic pain in his right Knee, lower back and left ankle, he now takes medication to help rebuild and heal damaged cartilage surrounding his injuries, Gel's for the Inflammation and arthritis, due to his Injuries his quality of life and good health has been altered, He is unable to run, jogg, play Basketball or sports for exercise.

#41) Due to the Judicial marshal services and their lack of care in servicing their vehicles owned and insured by the state, The state failed to keep their vehicles in safe opperating condition plaintiff was injured on his way to court while their state employees opperated there vehicles.

#42)   Due to the negligence of Judicial marshals Pugliares and Carr, for not thoroughly checking and or Inspecting their transport vehicle to make sure it was in safe operating condition prior to operating the stairs for loading their passengers onto and into their vehicle, plaintiff suffered harm.

#43)   Judicial marshals Failed to use "reasonable care" breeching its duty to keep plaintiff safe and protected from unreasonable risk while in their care, custody and control.

#44)   The STATE OF CONNECTICUT allowed unsafe vehicles owned and insured by the state of connecticut to transport inmate passengers to and from court through there state agency, Judicial marshal services. The state is liable for the lack of vehicle service & maintinence.

Deliberate Indifference to serious medical needs

#45)   After more than four hours while plaintiff waited in physical pain and suffering migrane due to his distress caused by his injuries he was denied Ice. when the bag of Ice he was initially given had melted, he was also denied IB proferen and or Aleve. Years later and through out these weeks and months since his accident, the plaintiff has continually wrote medical request complaining about his injuries. On 5-31-22 he was seen by the Garner correctionals Ortho Doctor mr. maletz, who perscribed him medication to help heal and or rebuild damaged cartilege in his right knee, but has not been sent to A hospital where he can proprerly get diagnoised, or have the proper testing performed to check if he has any torn legiments, tendons, and or tissues damage in his knee, Nor has he been given the

(Page 11)

#46)   Proper treatment as provided by the department of corrections pursaunt to there administrative directive "8-1, L. PHYSICAL AND OCCUPATIONAL THERAPIES", provided rehabilitation to the inmate to achieve and Maintain... Improved functioning in activities of daily living, please see EXHIBIT A, as attachment A.D-8-1, L. page 6-7

#47)   The plaintiff has not fully recovered from his injuries years later, he is not able to exercise to an optimed level to maintain good health, plaintiff has high cholestral, pre diabetis and needs to exercise daily to get his overall health under control and cannot do this in a healthy manner do to his lower back and knee pain caused by the state employees Judicial marshal services. Plaintiff suffers psychologically and emotionally not being properly diagnoised, not knowing exactly why he is still experiencing this prolonged pain that keeps him in a discouraged depressive state of mind.

## Exhaustion of Administrative Remedies

#48)   The plaintiff filed a grievance complaining about the Department of Corrections Knowingly allowing inmates in their care, custody and control to be transfered in unsafe vehicles. and how they failed to thoroughly inspect the safety of these transport vehicles, he complained about the Judicial marshals failure to inspect their vehicle for safe operating condition before boarding their inmate passengers, their failure to maintain and service their vehicle and their negligence in not keeping him safe from harm while operating their vehicle, he complained about the leck of medical attehation due to his injuries caused by defective marshals vehical.

(page # 12)

#49) The plaintiff filed an administrative appeal concerning due process, the Department of Corrections deliberately delayed responding to his request for order to reject his level 1 grievance and did not address his issue. Please see EXHIBIT B, as attachments (Level ①1 grievance) and his (②Inmate grievance appeal level 2). The plaintiff completed the two steps of the administrative appeal process, where an appeal to a level 3 will not be answered stated in Exhaustion of his administrative remedies. Plaintiff Cleary explained in his appeal to Level 2

#50) How his grievance was based on the procedural ability to properly record and document the incident regarding his injury, against A.D. see b(e) of Admins. Direc. In order to properly retain all documents, video footage via tracking number, incident reports written by both state judicial marshals, walker correctional staff, medical incident reports from both walker and Cheshire correctional facilities as well as adequate medical treatment, which was all filed the day after plaintiff was injured, and the time tolled though waiting on responses to Informal resolutions (inmate request).

### Plaintiff request to sue the state through the Connecticut claims commissioner

#51) On 5-25-2020 Plaintiff wrote the clerk of the claims Commissioners office Tara Dupont for proper forms to sue the state of connecticut and its state agency, plaintiff was sent a form titled How to File A Claim that states that the claims commissioner does not have jurisdiction over claims

(Page # 13)

#52)  related to the operation of state-owned vehicles; §
52-556. Please see Exhibit C attachment STATE OF
CONNECTICUT office of the claims commissioner document
"10. Claimants should be aware that the claims commissioner
does not have jurisdiction over certain types of claims against
the state, including, for example F. Claims related to the operation
of state-owned vehicles; § 52-556."

#53)  Plaintiff then Filed complaint in Hartford superior court
Case HHD-CV21-5069191-S Raynor, James v. Pugliares - Judicial
marshal, Marco on 8-16-2021, He then withdrew his claim
on 4-25-21, choosing to File his claim in this court.

#54)  Prior to filing his claim in this court plaintiff attempted
to seek permission to sue the state and its state agency, the
Judicial marshal service and its employees, he inquired information
on where to file his claim, to be sure that he is following
the proper procedures, for a second time the claims commissioner
did not make clear to him that their office was the right
avenue to file his claim,

#55)  Sending the plaintiff A How to File A Claim Form, marked
that his claim has been rejected when he wrote A letter
inquiring information to file A claim and with whom.

(Page # 14)

#56) Plaintiff had his letter returned to him dated 5-24-2022, may 10 2022 P.m. 5-24-22 965 INC, along with A how to File A claim form and application.

#57) Plaintiff followed directions by Filing claim and completed Fee waiver and affidavit and (1) how to File sheet, had it notorized on 6-2-2022, he sent 1 copy of original and 1 copy to the Claims Commissioner's office on 6-7-22.

#58) On 7-6-2022 plaintiff received A second copy of his initial letter of Inquirey to sue the state he received on 5-24-22, now returned to him dated, returned 6-24-22 969-INC may 10 2022 p.m. 5/4/22

#59) Plaintiff made a legal call through his unit counselor on 7-7-2022 at or around 9:35 A.m - 9:40 A.m. To the Claims Commissioner's office Using the number provided him on the How to File A claim form 860-713-5501,

#60) Plaintiff was unable to speak to A person (click) but left message on answering machine explaining that he received two letters of the same with two different dates of A letter he wrote 2 month ago, and that he properly Filed his Claim mailing 1 original and 1 copy on or around 6-7-2022 and why was he sent A 2nd copy of A letter he wrote and received again and not A response to his claim.

( Page # 15 )

#61)    Plaintiff also wrote a letter to the Claims Commissioner explaining this issue along with all the copies he received from the Claims Commissioner and a copy of his claim he sent to their office on or around 6-7-22. Please see Exhibit D containing plaintiff's letter to Claims Commissioner explaining the above issue dated 7-8-2022

#62)    Attached also are the copies of both of his letters of inquire that were returned to him dated "Returned 5-24-22 965 INC, 6-24-22 969-INC" by Claims Commissioner, copies of his initial letter dated 5-25-2020 seeking permission to sue the state, copies of his claim form, application for fee waiver and affidavit, along with copies displaying he exhausted his administrative remedies as requested on his claim form.

#63)    Plaintiff believes this was an attempt to delay his filing process to properly file claim through the Claims Commissioner office as to toll his time and the statue of limitation expires so before his claim expires pursuant to Conn. Genn. stat. 4-148, plaintiff files his claim to this court and seek this court and ask that it exercises it supplemental jurisdiction

(Page #16)

Deliberate Indifference to Plaintiff
safety and security

#64) When Judicial Marshal let down the stairs to the back of their vehicle they were made aware by plaintiff and several other inmate passengers that rusted pieces of metal fell from the steps, it was visually obvious to Judicial marshal pugliars and carr, that they were possibly unsafe.

#65) Both Judicial marshals failed to inspect and/or check if the stairs were safe before operating them and after seeing pieces of metal fall from the stairs. Marshals were made aware, known and should have known that they could cause Risk of injury to their passengers.

#66) After the stairs broke completely off the back of the truck Judicial marshall Carr used the broken steps as a prop telling the passengers to get into the truck knowingly, and with reckless disregard to our safely, further putting all their inmate passenger at risk for injury

#67) At know time did any of the Department of Corrections officers assigned to the sally port garge Inspect the Judicial marshal vechicle for safety before allowing their sentenced inmate to be handed over to "Jm" to be put into their vehicle - Department of Corrections officers have a duty to keep all inmates safe and secure from Unreasonable risk of injury whether it be in work, housing or Transportation

(Page # 14)

# 68)  Plaintiff was a sentenced person under the care, custody and control of the Commissioner of the Department of Corrections thus being a ward of the Department of Corrections who was responsible for his safety and security

#69)  Department of corrections officers were also made aware and were also witnesses for them selves and willfully chose not to inspect and or show concern for the passengers safety, nor did the record, document or provide safer means of loading passenger into the marshed vehicle. other than using the defective broken steps as a prop. Please see video footage. (WALK-VP-19-312 )

# 70)  Plaintiff at all times was a sentenced inmate, each defendant either knew or should have known that sentenced inmates are not supposed to be transported by The Judicial marshalls because he is sentenced to the Dept. of Corr, in the custody of the Commissioner Cook, law states that inmates who are sentenced are not to be transported by Judicial department only on initial sentence.

## Causes of Action

First Cause - The state of Connecticut is liable for damages because The state Judicial Marshal services is a Governmental state agency employed by the state of Connecticut, the state can waive its soverign Immunity provided the state has caused damage or injury. All Judicial Marshal transport vehicles are owned, registered and insured by the state in which the state owned Vehicle. The lack of pre trip inspections, service inspections, regular preventative maintenance and servicing of this state owned vehicle by the state and its state agency caused the plaintiff physical damage and injury. This is violative Eigth Amendment 42 U.S.C § 1983, cruel and usual punishment, the right to be safe from unreasonable risk of injury in transportation conditions

Second cause - The state is liable for damages because the state Judicial marshals officers are state employees who were negligent in operating the passenger steps and or a portion of their state owned vehicle causing the plaintiff personal injury. Judicial marshals Bygliar and Carr were made aware that the steps to their vehicle were unsafe, due to their wanton disregard the ignored the potential hazard and still order their Inmate passegers and the plaintiff to utilize the defective steps they were operating. This is violative of Eigth Amendmnt De liberate In difference 42.U.S.C § 1983

Third Cause - Judicial marshal Pugliars and Carr visually observed broken, rusted pieces of metal fall from the passenger stairs attached to the back of their vehicle, both state employee's Pugliars and carr were made aware by plaintiff that the stairs were breaking, they deliberately and Negligently disregarded both verbal and visual observations of defective vehicle steps and due to their Negligance in not inspecting the steps to their vehicle before operating them for use, and when they noticed the potential risk of Injury / hazard Caused plaintiff physical Injury. Both marshals knew or should have known that such hazard would create unreasonable risk of Injury breaching their doty to keep there Inmate passenger safe from harm. Marshals negligence did Constitute the Tort of Negligence.

Fourth Cause - Judicial marshal services were Negligent in not maintaing proper Care of their vehicles, due to their Lack of vehicle Inspection and or maintenance of their vehicle caused drmage and physical Injury to plaintiff is Violative of the Laws of the state of Connecticut and did constitute the Tort of Negligence

Fifth Cause - correctional officers at Walker Correctional were made aware of defective steps to the marshal vehicle prakes on their property and failed to inspect their vechicle before turning over Custody of plaintiff to Judicial marshals,    →

Correctional officers and Judicial marshals both had a
responsibility and duty of care to keep plaintiff safe from
unreasonable risk of injury in transportation conditions
their callous disregard of plaintiff's safety violates the
Eighth Amendment, Both correctional officers and Judicial
marshals present, knowingly allowed plaintiff to climb/utilize
the unsafe stepping ladder to the marshals vehicle while
still shackled and hand cuffed violates the Eighth Amendment
by cruel and unusal punishment, and or Deliberate Indifference
42 U.S.C § 1983.

Sixth Cause — The acts and negative, hostile statements
toward plaintiff by walker correctional officers present in the
walker sally port garage about plaintiff injuries were not valid
or legitimut injuries that he did not get hurt that bad, and
that he is faking his injuries and the nurse ms. Graham constitute
an indifferent and hostile attitude toward plaintiff's medical
need is violative Eighth Amendment Delibrate Indifference
42 U.S.C § 1983.


Seventh Cause — The denial and or delay of access to treat-
ment and plaintiff medical need by the department of corrections
medical staff constitute delibrate indifference, forcing plaintiff
to walk on a bum knee and to suffer from lower back
pain constitute delibrate indifference and an intentional
infliction of emotional distress upon plaintiff, is violative
of the laws of the state of Connecticut.

WHEREFORE, The plaintiff prays the court will grant;

#1) Compensatory damages in the amount of $ 50,000, with an equal amount held in reserve should medical treatment to repair injuries to plaintiffs left ankle, right knee, and lower back exceed the initial $ 50.000;

#2) The plaintiff prays the court will grant; Punitive damages based on the facts that neither the Department of Corrections officers @ Walker C.I., medical staff Ms. Graham nor State Judicial Marshals Pagliaro or Carr take/record any witness statements from the 10 or more passengers, nor did they take any photo's of plaintiff's injuries or of the scene itself with thee broken rusted metal stairs to the transport vehicle.

#3) Order the Department of Corrections medical staff to provide ongoing medical treatment including but not limited to physical therapy to rehabilitate his injuries according to the Department of Corrections Administrative Directive 8-1.

#4) The plaintiff prays that the court grant such other relief this court shall consider to be fair; such declaratory relief this court shall consider fair.

The "amount" in demand in the above matter is more than fifteen thousand dollars ($ 15,000) exclusive of interest and costs and the plaintiff claims the supplemental jurisdiction of this court

<u>Declaration Under Penalty of Perjury</u>

The undersigned declares under penalty of perjury that he is the plaintiff in the above action, that he has read the above complaint and that the information contained in this complaint is true and correct, 28 U.S.C. 1746, I declare under penalty of perjury the foregoing is true and correct.

Signed: James Raynor

James Raynor

Garner C.T.

50 Wunnawruk Rd

Newtown CT 06470

SOLORES T. JONES
*NOTARY PUBLIC*
My Commission Expires Nov. 30, 2024
11/30/24

Notary Public Witness:                    6/23/22

(PAGE# 23)

Attachments

A - D - 8.1→"L."  Pages 6-7

Department
of           〉    D.o.c.    Administrative Directive
Corrections                   Physical and Occupational
                                    Therapies

# EXHIBIT

# A

▨  Administrative Directive  8.1

   Page 6 of 11  Section "L." "Physical and Occupational Therapies"

   Page 7 of 11  Continue of paragraph in section "L."

# i

| Directive Number 8.1 | Effective Date 11/02/2014 | Page 6 of 11 |
|---|---|---|
| Title | Scope of Health Services Care | |

G.  **Infection Control**. The contracted health services provider shall maintain an Infection Control Program that:

1.  promotes a safe and healthy environment;
2.  effectively monitors the incidence of infectious and communicable disease among inmates;
3.  reduces the incidence and spread of these diseases;
4.  ensures that inmates infected with these diseases receive prompt care and treatment; and,
5.  provides for the completion and filing of all reports consistent with local, state and federal laws and regulations.

An Infection Control Manual shall be reviewed and revised at a minimum annually and shall be available in all health services units.

H.  **Infectious Disease**. The contracted health services provider shall ensure that monthly infectious disease clinics, by board certified Infectious Disease Specialists, are available for HIV positive inmates and inmates with Acquired Immune Deficiency Syndrome (AIDS) committed to DOC facilities. The contracted health services provider shall provide 24-hour on-call availability of an Infectious Disease Specialist.

I.  **OB/GYN Services**. The contracted health services provider shall provide prenatal and postpartum services for inmates in DOC facilities. The contracted health services provider shall arrange for delivery at an outside hospital. Pregnant inmates shall receive comprehensive prenatal healthcare including appropriate diet, vitamins, routine obstetrical clinic visits and counseling. All female inmates shall be offered gynecologic examination and PAP smear on admission and annually.

Inmate victims of sexually abusive vaginal penetration while incarcerated shall be offered pregnancy tests and tests for sexually transmitted infections as medically appropriate and at no cost. If pregnancy results, the inmate shall be given timely and comprehensive information about and access to all lawful pregnancy-related medical services.

J.  **Medical Orthotics, Prosthetics, and Other Accommodations for Disabilities**. The contracted health services provider and DOC shall provide aids for disabilities including but not limited to: eyeglasses, dentures, hearing aids, braces, crutches, artificial limbs and wheelchairs to inmates in DOC facilities when the health or activities of daily living of the inmate would otherwise be adversely affected, as determined by the responsible physician or dentist.

K.  **Pharmacy**. The contracted health services provider shall ensure that all inmates committed to the Department have access to pharmacy services in accordance with Administrative Directive 8.3, Pharmacy Services.

L.  **Physical and Occupational Therapies**. The contracted health services provider and DOC shall provide qualified therapists to

| Directive Number | Effective Date | Page 7 of 11 |
|---|---|---|
| 8.1 | 11/02/2014 | |
| Title | Scope of Health Services Care | |

provide physical therapy, occupational therapy and rehabilitation therapy to inmates in DOC facilities. Physical and occupational therapy shall be limited to services that assist the inmate to achieve and maintain self-care and improved functioning in activities of daily living.

M.  Physician/Physician Extender Chronic Care Clinics. The contracted health services provider shall provide chronic care clinics for inmates with chronic illness. Physicians and Physician Extenders shall oversee the operation of each clinic and determine each individual inmate's schedule for follow up visits. Chronic care clinics shall include but not be limited to diabetes, hypertension, and pulmonary.

N.  Preventive Care and Immunizations. The contracted health services provider shall provide preventive care and immunizations to inmates in DOC facilities. Immunizations shall be provided according to medical necessity and subject to mutually agreed on policy. Immunizations shall include but not be limited to Diptheria Tetanus, Pneumococcal, Influenza and Hepatitis A and B vaccines.

O.  Sex Treatment Services. The contracted health services provider and DOC shall ensure that all sentenced inmates with sex treatment classification scores of 2 or greater have access to sex offender programming consistent with Administrative Directive 8.13, Sex Offender Programs.

P.  Specialty Services. Each Health Services Unit shall ensure access to specialty services for inmates when clinically indicated. The Utilization Review Committee shall utilize accepted clinical criteria approved by the Executive Health Services Committee to determine if off-site specialty services are appropriate on a case-by-case basis. An inmate with a pending medical procedure or off-site health appointment shall be placed on Medical Hold Status until the scheduled health care has been provided.

Q.  Treatment Therapies. The contracted health services provider shall provide appropriate treatment therapies, as determined by the treating physician and approved by the Utilization Review process, for inmates in DOC facilities that include but are not limited to:

1.  Chemotherapy and radiation therapy;
2.  Respiratory and inhalation therapy;
3.  Dialysis (both hemodialysis and peritoneal dialysis); and,
4.  Intravenous (IV)/Infusion therapy.

R.  Mental Health Services. The contracted health services provider shall provide mental health services consistent with community standards and based on current American Correctional Association (ACA) and National Commission on Correctional Health Care (NCCHC) standards, and in accordance with Administrative Directives 8.5, Mental Health Services and 8.14, Suicide Prevention.

All health care services rendered to an inmate shall be documented in the inmate's health record in accordance with Administrative Directive 8.7, Health Records Management.

# 3

Attachment

(i) Administrative Remedy Grievance Level 1

(2) Inmate Administrative Remedy Grievance Appeal Level 2

EXHIBIT

B

Inmate
Administrative Remedy Form IGP# 137-20-144

Inmate Grievance Appeal - Level 2/3 IGP# 137-20 144
Exhausted the Departments Administrative Remedies, Level 3
Appeal will not be answered.



# Inmate Administrative Remedy Form
## Connecticut Department of Correction

CN 9602
REV 9/20/17

| Facility/Unit: Cheshire | Date: 11-2-19 |
|---|---|
| Inmate name: James Raynor | Inmate number: 318905 |

## SECTION 1: SELECT ADMINISTRATIVE REMEDY A, B or C BELOW

### Follow the instructions and Refer to Section 2 below
*(for property claims, complete form CN 9609, Lost/Damaged Property Investigation Form and deposit in the 'Administrative Remedies' box).*

**A.** ☑ **I am filing a Grievance.**
- Prior to filing a grievance, you must attempt informal resolution.
- Attach a copy of CN 9601, Inmate Request Form with the staff member's response **OR** state in Section 4 the reason why the form is not attached.
- Grievances must be filed within 30 days of the occurrence or discovery of the cause of the grievance.

**B.** ☐ **I am requesting a Health Services Review:**

| ☐ All Other Health Care Issues | ☑ Diagnosis/Treatment | Complete Section 4 |
|---|---|---|

**I am filing an Appeal of a (Select one below):** *(Appeals must be filed within 15 days of notification of a decision.)*

**C.**

| ☐ Disciplinary Action | | > | Complete Section 3 below |
|---|---|---|---|
| ☐ Special Management Decision | ☐ Classification Decision | > | |
| ☐ Media Review Committee Decision | ☐ Furlough Decision | > | |
| ☐ Security Risk Group Designation | ☐ ADA Decision | > | Complete Section 4 |
| ☐ Determination of Grievance Process Abuse | ☐ Rejection of Outside Tapes/CDs | > | |
| | ☐ Rejection of Correspondence | > | |

## SECTION 2: OTHER REQUIREMENTS FOR USING THE INMATE ADMINISTRATIVE REMEDY PROCEDURE
### Read and comply with the instructions below, then complete Section 4 (State the Problem) on the reverse side.

- Only one request for an administrative remedy must be submitted on this form.
- The request for an administrative remedy and the action sought should be stated simply and coherently.
- The length of this request for an administrative remedy shall be restricted to the space available in Section 4 and one (1) additional 8 1/2 x 11 inch page.
- This request for an administrative remedy must be free of obscene or vulgar language or content.
- This request for an administrative remedy must be filed by the inmate who is personally affected by the subject of the request and shall not be filed by an inmate on behalf of another.
- A repetitive request for administrative remedy may not be filed by the same inmate, when a final response has been provided and there has been no change in any circumstances that would affect the response; or when the initial request for an administrative remedy is still in process.

## SECTION 3: DISCIPLINARY SECTION – Complete this Section for a Disciplinary Appeal ONLY

- You may file a Disciplinary Appeal **ONLY** if you have pleaded not guilty and have been found guilty at a disciplinary hearing.
- If so, complete this section; then complete Section 4 (State the Problem) on the reverse side. >>>

| Offense: | Report date: |
|---|---|
| Facility where hearing was conducted: | Date of hearing: |

| Did you have an advisor? | ☐ yes ☐ no | If yes, name of advisor: | | |
|---|---|---|---|---|
| Did you identify witness (es) to the investigator? | ☐ yes ☐ no | Did your witness (es) testify? | | ☐ yes ☐ no |
| Name(s) of any witness(es): | | | | |

*Page #1*

| **CONFIDENTIAL**<br>(FOR OFFICIAL USE ONLY) | Inmate name: James Raynor | |
|---|---|---|
| | Inmate number: 318905 | Housing: SB1-145 |

**SECTION 4: STATE THE PROBLEM AND REQUESTED RESOLUTION**
- Provide any factual information that is applicable, including any responses from staff.
- State the action that you think should be taken to resolve the problem.
- PLEASE PRINT.

Note: Also Asked For preservation of video footage within the 14day of the A.D. 6-9-20
This grievance is in regard to the fact that the Department of Corrections
Knowingly allowes the inmates in their care, custody and control to be —
transported to out side facilities such as court, and hospitals; In un safe
vehicles belonging to the Judicial marshal services which are inspected by
D.O.C Personel on the coming and going to and from A facility location via
correctional facilities, Hospitals etc. And also inspected, cared & maintained by the
Judicial marshal services charged with the safe transport of passengers Inmate
or not. On tuesday 9-17-19 I was being injured on my way to court while
transfering from Walker C.I. into the marshal's vehicle, due to the Judicial
marshal services negligence in maintaining their transportation vehicles in a safe
and proper running order, the rusted, rotted stepping, steps to the marshals vehicle
broke and landed on me hurting my right leg, Knee, shin and foot. I seek medical
treatment check up for possible nerve damage, (MRI) and the action sought is that
these transport vechicle should be properly maintained, replaced with new ones for safer
travel & transport as well as financial compensation for pain and suffering
and a tetanus shot for possible infection from rusted metal.

| Inmate signature: James Raynor C | Date: 11-2-19 |
|---|---|

- For all remedies except health services, deposit this form in the Administrative Remedies box.
- For a health services issue, deposit this form in the Health Services box.

**SECTION 5: DECISION (OFFICIAL USE ONLY): DO NOT WRITE IN THE SPACE BELOW.**

| Date Received: 11/18/19 | IGP #: 137 - 20-144 | T#: |
|---|---|---|

| Disposition: Rejected | Date of Disposition: 11/25/19 |
|---|---|

Reason:
Your grievance is rejected. Your grievance was received on 11/18/2019 regarding an incident that you
alleged happened on 9/17/2019. This grievance is far beyond allowed timeframe to file per
Administrative Directive 9.6 Inmate Administrative Remedies, Section 6 (C) Filing a Grievance; the
grievance must be filed within 30 calendar days of the occurrence or discovery of the cause of the
grievance.

| ☐ You have exhausted DOC's Administrative Remedies. | ☒ This matter may be appealed to: L2 |
|---|---|

| Signature: K3 ——, Warden | Date: 11/25/19 |
|---|---|

Page #. 3



# Inmate Grievance Appeal Form - Levels 2/3
## Connecticut Department of Correction

CN 9604
REV 1/31/09

Inmate name: _James Raynor_ | Inmate number: _318905_

Facility/Unit: _Cheshire_ | Housing unit: _SB1-145_ | Date: _12-4-19_

IGP number: _137-20-144_ | T number:

Use this form to appeal a Level 1 decision. CN 9602, Inmate Administrative Remedy Form and any attachments must accompany this form; no review will be undertaken if they do not accompany this form. Your appeal must be filed within 5 days of the Level 1 response; deposit it in the "Administrative Remedies" box.

### Appeal of Level 1 Decision to Level 2

I am appealing the Level 1 decision because: _my grievance is not based on the alleged incident, my grievance is based on the Procedural ability to Properly record and or document the alleged incident, against A.D. sec 6(C) Inorder to Properly retain all documents, video footage via tracking number, Incident reports written by both state Judical Marshals, Walker C.I. correctional staff, medical incident reports from both walker & Cheshire, as well as adequate medical treatment. As of to date none of my request have been remedied, in which I filed the day after the incident to be in compliance with the chain of command via informal resolution prior to filing grievance. therefore my grievance should not be rejected according to A.D. 6 (C)_

Inmate signature: _James Raymore_ | Date: _12-4-19_

### FOR OFFICIAL USE ONLY - LEVEL 2 REVIEW

Date received: _12/13/19_ | Disposition: _Rejected_ | Date of disposition: _12/27/19_

Reasons:
_You are appealing a level one grievance regarding transportation vehicles at M.W.C.I. The response given by Warden Barone was appropriate. You have filed your grievance beyond 30 calendar days of the incident date. Additionally, filing a formal complaint regarding the maintenance of Judicial Marshal vehicles would not be under the purview of the Commissioner of the DOC. Your level 2 grievance appeal is rejected._

Level 2 reviewer: _William McD__

☐ This grievance may be appealed within 5 days to Level 3.

☒ You have exhausted the Department's Administrative Remedies. Appeal to Level 3 will not be answered.

### Appeal of Level 2 Decision to Level 3

I am appealing the Level 2 decision because:

Inmate signature: | Date:

### Deposit your appeal in the "Administrative Remedies" box.

### FOR OFFICIAL USE ONLY - LEVEL 3 REVIEW

Date received: | Disposition: | Date of disposition:

Reasons:

Level 3 reviewer:

_Page # 4_

Attachments

# EXHIBIT

# C

▨  COPY of Plaintiffs initial Letter dated 5-25-2020 seeking Permission to sue state.

▨  STATE OF CONNECTICUT office of the claims commissioner document stating their office does not have Jurisdiction over claims related to state-owned vehicles.

▨  Proof of Plaintiffs Withdrawl sent to him by Clersks office of Hartford Superior Court Involving Case HHD-CV21-5069191-S Raynor, James V. Pugliares - Judicial Marshal, Marco.

▨  Copies of How to file A Claim form, as being rejected, Copies of Plaintiffs returned Letters by claims commissione twice of the same letter with two different dates same post mark (P.m) 5-24-22 965 INC, 6.24-22 969-INC

▨  Copy of Plaintiffs Letter to claims commission explaining that he mailed 1 orignal and 1 copy of his Claim form, Fee wavier, affidavit and Exhaustion of Remedies.

▨  Copies of the above mentiond documents and Claim
    mailed To the Claims commission. Certified mail      Dated: 7-8-22

PG

5-25-2020

To: Taru Dupont, Clerk

    office of the Claims Commissioner

    450 Columbus Boulevard, ste-203

    Hartford, CT 06103

    Tel: 860-713-5501

Dear Ms. Dupont my name is MR. James Raynor, I hope all is well with you and your family during these perilous times. I am writing to humbly ask, Can you please send me the standard forms to file a monetary claim for a bodily injury I received in a Judicial marshal moter van accident.

I wish to seek permission from the Claims Commissioner to sue the State of Connecticut through Conn. Gen. stat. sec. 4-160. The Judicial marshal is a state agency.

Thank you for your time and assistance,

JUN - 8 2020

Respectfully

James Reymour

C.C. James Raynor #318905

    macdougall-Walker C.I.

    1153 East street south

    Suffield, CT 06080

Pg 1 of 2

450 Columbus Boulevard
Suite 203

CHRISTY SCOTT                              Hartford, CT 06103
CLAIMS COMMISSIONER        **STATE OF CONNECTICUT**        Phone (860) 713-5501
                                 Office of the Claims Commissioner        Fax (860) 706-1482

deductible, and the amount received or to be received from insurance, or the cover sheet
of the applicable insurance policy should accompany the claim.

10. Claimants should be aware that the Claims Commissioner does not have jurisdiction over
    certain types of claims against the state, including, for example:

    a.   claims upon which suit is otherwise authorized by law including suits to recover
       similar relief arising from the same set of facts; General Statutes § 4-142 (2);

    b.   claims for payment of employment benefits; § 4-142 (1);

    c.   claims for refunds of taxes; § 4-142 (5);

    d.   claims related to public works contracts; § 4-61;

    e.   claims related to defective highways; § 13a-144; and

    f.   claims related to the operation of state-owned vehicles; § 52-556.

PG IF 3



**State of Connecticut Judicial Branch**
## Superior Court Case Look-up



Superior Court Case Look-up
  Civil/Family
  Housing
  Small Claims

Attorney/Firm Juris Number Look-up ⧉

Case Look-up
  By Party Name
  By Docket Number
  By Attorney/Firm Juris Number
  By Property Address

Short Calendar Look-up
  By Court Location
  By Attorney/Firm Juris Number
  Motion to Seal or Close
  Calendar Notices

Court Events Look-up
  By Date
  By Docket Number
  By Attorney/Firm Juris Number

Legal Notices

Pending Foreclosure Sales ⧉

Understanding
Display of Case Information

Contact Us



Comments

*e* HHD-CV21-5069191-S    **RAYNOR, JAMES v. PUGLIARES - JUDICIAL MARSHAL, MARCO**

**Prefix:** I    **Case Type:** V01    **File Date:** 08/16/2021    **Return Date:** 08/24/2021

Case Detail | Notices | History | Scheduled Court Dates | E-Services Login | Screen Section Help ▶ | Exhibits

To receive an email when there is activity on this case, click here. ⧉

---

Information Updated as of: 06/15/2022

### Case Information

**Case Type:** V01 - Vehicular - Motor Vehicles - Driver and/or Passenger(s) vs. Driver(s)
**Court Location:** HARTFORD JD
**List Type:** No List Type
**Trial List Claim:**
**Last Action Date:** 04/26/2022 (The "last action date" is the date the information was entered in the system)

---

### Disposition Information

**Disposition Date:** 04/25/2022
**Disposition:** WITHDRAWAL OF ACTION
**Disposition By:** BY THE PLAINTIFF

---

### Party & Appearance Information

| Party | | No Fee Party | Category |
|---|---|---|---|
| **P-01** | **JAMES RAYNOR** | | Plaintiff |
| | Self-Rep: 50 NUNNAWAUK ROAD NEWTOWN, CT 06470    File Date: 08/16/2021 | | |
| **D-01** | **MARCO PUGLIARES - JUDICIAL MARSHAL** | | Defendant |
| | Attorney: *e* ROBERT SEARLS DEARINGTON (433245) File Date: 03/23/2022 ATTY GEN-PUBLIC SAFETY 110 SHERMAN STREET HARTFORD, CT 06105 | | |
| **D-02** | **PERCY CARR - JUDICIAL MARSHAL** | | Defendant |
| | Attorney: *e* ROBERT SEARLS DEARINGTON (433245) File Date: 03/23/2022 ATTY GEN-PUBLIC SAFETY 110 SHERMAN STREET HARTFORD, CT 06105 | | |
| **D-03** | **O'DONOVAN MURPHY - DIRECTOR OF JUDICIAL MARSHAL SERVICES** | | Defendant |
| | Attorney: *e* ROBERT SEARLS DEARINGTON (433245) File Date: 03/23/2022 ATTY GEN-PUBLIC SAFETY 110 SHERMAN STREET HARTFORD, CT 06105 | | |
| **D-04** | **ROLLIN COOK - COMMISSIONER OF D.O.C.** | | Defendant |
| | Attorney: *e* ROBERT SEARLS DEARINGTON (433245) File Date: 03/23/2022 ATTY GEN-PUBLIC SAFETY 110 SHERMAN STREET HARTFORD, CT 06105 | | |

**Viewing Documents on Civil, Housing and Small Claims Cases:**

If there is an *e* in front of the docket number at the top of this page, then the file is electronic (paperless).

- Documents, court orders and judicial notices in electronic (paperless) civil, housing and small claims cases with a return date on or after January 1, 2014 are available publicly over the internet.* For more information on what you can view in all cases, view the Electronic Access to Court Documents Quick Card.

*Page #4*