**UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT**

JAMES RAYNOR,             :
     *Plaintiff*,          :
                         :
     v.                  :       Case No. 3:22-CV-1103 (OAW)
                         :
STATE OF CONNECTICUT, et al.,    :
     *Defendants.*

**<u>INITIAL REVIEW ORDER AND RULING ON MOTION TO AMEND</u>**

Self-represented plaintiff, James Raynor ("Mr. Raynor" or "Plaintiff"), currently incarcerated at Garner Correctional Institution, has filed a complaint pursuant 42 U.S.C. §§ 1983, 1985, 1986, and 1988, against the State of Connecticut, the Connecticut Judicial Marshal Services, Commissioner Rollin Cook, Warden Buttricks, District Manager William Mulligan, State Judicial Marshal Marco Pugliares, and State Judicial Marshal Percy Carr. Plaintiff asserts federal claims for deliberate indifference to medical needs, and deliberate indifference to health and safety, as well as state law claims for negligence, and for intentional infliction of emotional distress. Plaintiff names the individual defendants in their individual and official capacities. He seeks damages and injunctive relief in the form of medical treatment.

I.      **STANDARD OF REVIEW**

Under 28 U.S.C. § 1915A, the court must review prisoner civil complaints and dismiss any portion that "(1) is frivolous, malicious, or fails to state a claim upon which

1

relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." *See* 28 U.S.C. § 1915A(b)(1)–(2).  Although highly-detailed allegations are not required, the Complaint must "contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  This plausibility standard is not a "probability requirement" but imposes a standard higher than "a sheer possibility that a defendant has acted unlawfully."  *Id.*

In undertaking this analysis, the court must "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief."  *Faber v. Metro Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted).  However, the court is "not bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions," *id.*, and "a formulaic recitation of the elements of a cause of action will not do."  *Iqbal*, 556 U.S. at 678.  Consequently, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.* (citing *Twombly*, 550 U.S. at 555).  Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will … be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 679.

With respect to self-represented litigants, it is well-established that "[*p*]*ro se* submissions are reviewed with special solicitude, and 'must be construed liberally and

interpreted to raise the strongest arguments that they suggest.'"  *Matheson v. Deutsche Bank Nat'l Tr. Co.*, 706 F. App'x 24, 26 (2d Cir. 2017) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 3006) (per curiam)).  *See also Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed pro se is 'to be liberally construed,' and 'a pro se complaint, however inartfully pleaded, must be held to less stringent standards that formal pleadings drafted by lawyers.'" (internal citations omitted)).  This liberal approach, however, does not exempt pro se litigants from the minimum pleading requirements described above: a pro se complaint still must "'state a claim to relief that is plausible on its face.'"  *Mancuso v. Hynes*, 379 F. App'x 60, 61 (2d Cir. 2010) (quoting *Iqbal,* 556 U.S. at 678).  Therefore, even in a pro se case, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (internal quotation marks and citation omitted), and the court may not "invent factual allegations" that the plaintiff has not pleaded.  *Id.*

## II.    BACKGROUND

The incident underlying this action occurred while Plaintiff was confined at Cheshire Correctional Institution ("Cheshire").  On September 17, 2019, at 6:30 a.m., Plaintiff was transported from Cheshire to Walker Correctional Institution ("Walker"), in order to await transport to court by the Judicial Marshal Services.  ECF No. 1 ("Complaint") at ¶ 11.

At 9:15 a.m., judicial marshals arrived to bring Plaintiff and ten other inmates to court.  *Id.* at ¶ 12.  Defendant Carr searched all the inmates for contraband then shackled

Plaintiff's ankles and handcuffed him to inmate Carmona. *Id.* The inmates were then lined up and escorted from the Walker holding cells into the sally port. *Id.* at ¶ 13. Plaintiff was walking slightly behind inmate Carmona as he approached the Marshals' vehicle. *Id.*

Plaintiff and inmate Carmona were the first to approach the back of the vehicle. *Id.* at ¶ 14. Defendant Pugliares opened the doors and prepared to operate the steps to the back of the vehicle to load the prisoners into the vehicle. *Id.* Defendant Pugliares pulled the steps to the back of the vehicle, letting them swing open. *Id.* at ¶ 15. Defendants Carr and Pugliares as well as the inmates saw pieces of rusted metal drop from the stairs where they were attached to the vehicle. *Id.* Inmates commented that the vehicle was old and broken. *Id.*

Defendants Pugliares and Carr disregarded the comments about the rusted steps and did not check the steps for stability before telling the inmates to get into the back of the vehicle. *Id.* at ¶ 16. Defendant Pugliares stepped to the left of the door and steps to assist the inmates into the vehicle. *Id.* at ¶ 17.

Inmate Carmona was the first inmate guided up the steps to the back of the vehicle by Defendant Pugliares. *Id.* at ¶ 18. Plaintiff, trailing behind inmate Carmona also began to use the steps. *Id.* Plaintiff and inmate Carmona were standing on the steps at the same time. *Id.* at ¶ 19. Plaintiff heard a loud snap as the steps broke off the back of the vehicle. *Id.* at ¶ 20. Defendant Pugliares caught inmate Carmona and prevented him from falling onto Plaintiff. *Id.* at ¶ 21. The steps hit Plaintiff in the right knee, slid down part of his shin, and landed partly on his foot. *Id.* at ¶ 22. Although Defendant Pugliares attempted to minimize the injury by holding inmate Carmona, Plaintiff still was hurt. *Id.*

4

Rust and pieces of rotted metal flew into the air causing Plaintiff to get rust dust in his mouth.  *Id.* at ¶ 23.

Defendant Carr used his foot to turn over the broken steps, and tested them to see whether they could be used as a prop.  *Id.* at ¶ 24.  After deciding that the steps were sturdy enough, he directed the inmates to step onto the broken steps to get into the vehicle.  *Id.* at ¶ 25.  The inmates entered the vehicle without further incident and were transported to court.  *Id.* at ¶ 26.

While in the vehicle waiting to leave the facility, Plaintiff began experiencing pain and swelling in his lower knee.  *Id.* at ¶ 27.  Upon leaving sally port area, Plaintiff knocked on the inside wall of the vehicle that connected to the driver's area.  *Id.*  Plaintiff told the marshals that he wanted to be seen by medical staff before going to court because he was beginning to experience pain.  *Id.* at ¶  28.  The marshals sounded upset but said they would "swing around" so Plaintiff could  be seen by medical staff.  *Id.* at ¶ 29.

Plaintiff was unloaded from the vehicle amid comments by Walker staff that he was faking his injuries.  *Id.* at ¶ 31.  Plaintiff's request that his injuries be photographed and claims that the injury was not his fault were ignored.  *Id.*  Plaintiff was required to walk to a holding cell to wait for a nurse.  *Id.* at ¶ 32.  After a period of time, Plaintiff was required to walk to the medical unit.  *Id.*  When he requested a wheelchair or crutches, correctional officers denied the request and said that his injuries could not be "that bad" as he was not screaming in pain.  *Id.*  When Plaintiff explained what had happened to the nurse, she also did not take his injuries seriously.  *Id.*

Plaintiff insisted that the nurse take photographs of the injuries to his right leg.  *Id.*

at ¶ 33.  As he was not incarcerated at Walker, Plaintiff also asked for a copy of the incident report.  *Id.*  The nurse told him that the incident report would be emailed to the Cheshire Medical Office.  *Id.*

The nurse looked only at Plaintiff's knee, even though he told her that he had "tweeked" his lower back from the quick jerk reaction through being attached to another inmate and had reinjured his left ankle which had been hurt in a slip and fall down some stairs.  *Id.* at ¶ 34.  The nurse told him that, if he could walk on his feet, he would be fine and noted that inmates were always lying about their injuries.  *Id.* at ¶ 35.  When Plaintiff responded with his own assessment of his injuries, he was given some ice for the swelling in his knee and ibuprofen for pain before being told to leave.  *Id.* at ¶ 36.

Plaintiff was escorted back to a holding cell and had to wait for eight hours to be transported back to Cheshire.  *Id.* at ¶ 37.  During this time, Plaintiff suffered pain and developed a migraine headache.  *Id.*  He was not provided crutches or a wheelchair.  *Id.*  Plaintiff requested more ice for his knee after the original ice melted and more ibuprofen for his pain and headache, but the request was denied.  *Id.* at ¶ 38.

No correctional officials, medical staff, or judicial marshals took pictures of Plaintiff's injuries or the accident scene or statements from the other inmates present at the accident scene.  *Id.* at ¶ 39.

Plaintiff experiences chronic pain in his right knee, lower back, and left ankle.  *Id.* at ¶ 40.  He takes medication to help rebuild and heal damaged cartilage and uses gels for inflammation and arthritis.  *Id.*  He claims that he can no longer run, jog, play basketball or preform squats.  *Id.*  Plaintiff continued to submit medical requests seeking treatment

for his injuries.  *Id.* at ¶ 45.  On May 31, 2022, he was seen by an orthopedist who prescribed medication to heal and rebuild the damaged cartilage in his right knee.  *Id.* However, he has not been sent to a hospital for testing to determine whether he has any torn ligaments or tendons, or any tissue damage.  *Id.*

## III.   DISCUSSION

Plaintiff lists seven causes of action: (1) an Eighth Amendment claim for damages against the State of Connecticut, alleging that the Judicial Marshal Service failed to properly maintain the transport vehicle; (2) an Eighth Amendment deliberate indifference claim for damages against the State of Connecticut based on the alleged negligence of Defendants Pugliares and Carr; (3) a claim for negligence against Defendants Pugliares and Carr; (4) a claim for negligence against the Judicial Marshal Service for lack of proper vehicle maintenance; (5) an Eighth Amendment deliberate indifference to safety claim against correctional officers at Walker, and Defendants Pugliares and Carr; (6) Eighth Amendment deliberate indifference to medical needs claims against correctional officers at Walker and the nurse who treated Plaintiff based on their attitudes and failure to credit his claims of injury; and (7) claims against correctional medical staff, for Eighth Amendment deliberate indifference to medical needs, and for (state) intentional infliction of emotional distress, based on their requiring Plaintiff to "walk on a bum[] knee and to suffer from lower back pain."  ECF No. 1 at 21.

### A.  Exhaustion of Administrative Remedies

The Prison Litigation Reform Act ("PLRA") requires a prisoner pursuing a federal

lawsuit to exhaust available administrative remedies before a court may hear his case. *See* 42 U.S.C. § 1997e(a) (providing in pertinent part that "[n]o action shall be brought with respect to prison conditions under section 1983 … or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted"); *see also Ross v. Blake*, 578 U.S. 632, 635 (2016).  "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

The PLRA requires "proper exhaustion"; the inmate must use all steps required by the administrative review process applicable to the institution in which he is confined and do so properly.  *Jones v. Bock*, 549 U.S. 199, 218 (2007) (citing *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)); *see also Amador v. Andrews*, 655 F.3d 89, 96 (2d Cir. 2011) (holding that exhaustion necessitates "using all steps that the [government] agency holds out and doing so properly").  "Exhaustion is mandatory—unexhausted claims may not be pursued in federal court."  *Amador*, 655 F.3d at 96, *see also Jones*, 549 U.S. at 211.

While the PLRA mandates exhaustion of administrative remedies, it also "contains its own, textual exception to mandatory exhaustion."  *Ross v. Blake*, 578 U.S. 632, 642 (2016).  More specifically, Section 1997e(a) provides that only those administrative remedies that "are available" must first be exhausted.  42 U.S.C. § 1997e(a); *Ross*, 578 U.S. at 642 ("the exhaustion requirement hinges on the availability of administrative remedies") (internal quotation marks and brackets omitted).  In the PLRA context, the Supreme Court has determined that "availability" means "an inmate is required to exhaust

8

those, but only those, grievance procedures that are capable of use to obtain some relief for the actin complained of." *Ross*, 578 U.S. at 642 (internal quotation marks and citation omitted).  The *Ross* Court identified three circumstances in which a court may find internal administrative remedies are not available to prisoners under the PLRA.  *Id.* at 643—44. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* at 643.  "Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id.*  Finally, an administrative remedy is not "available" when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 644.

In *Williams v. Priatno*, the United States Court of Appeals for the Second Circuit noted that "the three circumstances discussed in Ross do not appear to be exhaustive[.]" 829 F.3d 118, 123 n.2 (2d Cir. 2016).  However, they offer guidance as to unavailability. *See Mena v. City of New York*, 2016 WL 3948100, at *4 (S.D.N.Y. July 19, 2016).

The administrative remedies for the Connecticut Department of Correction are set forth in Administrative Directive 9.6 and may be found at portal.ct.gov/DOC/AD/AD-Chapter-9.  For all matters involving any aspect of a prisoner's confinement (including claims related to conditions of confinement) subject to the Commissioner's authority, but not specifically identified in Sections 7 through 10 of Directive 9.6, the applicable remedy is the Inmate Administrative Remedy Procedure.

Plaintiff attaches a copy of his administrative remedies to the Complaint.  *See* ECF

No. 1 at 28—30.  As Plaintiff was able to file a grievance and grievance appeal, and makes no showing that prison officials are unwilling to provide any relief to properly-filed grievances, the court finds that administrative remedies were available to him.

The CN9602 form is used for three purposes: an Administrative Grievance; a Health Services Review; and an Administrative Appeal.  Section 1 of the form requires the inmate to "select administrative remedy A, B, or C below."  *Id.* at 28.  Instead of following this direction, Plaintiff selected both an Administrative Remedy and a Health Services Review.  Thus, he failed to comply with the specific directions on the form.  In the section in which to describe his claim, Plaintiff states as follows:  "This grievance is in regard to the fact that the Department of Corrections knowingly allow[]s the inmates in their care, custody and control to be - transported to outside facilities such as court and hospitals; in unsafe vehicles...."  ECF No. 1 at 29.  Although he seeks medical treatment for injuries he allegedly suffered in the accident that is the subject of this action, Plaintiff's claim challenges the conditions of his confinement, not the provision of medical care.[1]  Thus, his administrative remedy is governed by the requirements of Directive 9.6.

The applicable procedure involves an informal resolution attempt, a grievance, and a grievance appeal.  Each step includes time for the prison official to respond—fifteen business days for the informal resolution attempt, and thirty days for the grievance and grievance appeal.  *See* Dir. 9.6(6).  Each step also includes direction for proceeding to

---

[1] In his grievance appeal, Plaintiff states that his grievance "is based on the procedural ability to properly record and or document the alleged incident."  ECF No. 1 at 30.  Although this characterization is different from his statement in the grievance form, it still would come under Directive 9.6.

the next step if a response is not received.  For example, if the inmate does not receive a timely response to his inmate request, he can file a grievance and explain why he did not include evidence of his attempt at informal resolution.  *See* Dir. 9.6(6)(a)(ii)(2).  With or without a response to the informal resolution attempt, the grievance must be filed within thirty days of the incident.  *See* Dir. 9.6(6)(a)(ii)(4).

Exhaustion of administrative remedies is an affirmative defense on which the defendants bear the burden of proof.  *See Jones*, 549 U.S. at 216.  However, the district court may dismiss a complaint for failure to exhaust administrative remedies where that failure appears on the face of the complaint.  *See id.* at 214—15; *Williams v. Priatno*, 829 F.3d 118, 122 (2d Cir. 2016) (recognizing that "inmates are not required to specifically plead or demonstrate exhaustion in their complaints," but noting that "a district court still may dismiss a complaint for failure to exhaust administrative remedies if it is clear on the face of the complaint that the plaintiff did not satisfy the PLRA exhaustion requirement") (quoting *Jones*, 549 U.S. at 216).

Plaintiff's accident occurred on September 17, 2019.  He filed his grievance on November 2, 2019.  As he did not comply with the requirement that all grievances be filed within thirty days, the grievance was denied.  In his grievance appeal, Plaintiff attempts to excuse the late filing by stating that he submitted requests for copies of the incident reports and video footage the day after the accident, but that he had not received responses to these requests for informal resolution.  ECF No. 1 at 30 ("As of to date none of my request have been remedied, in which I filed the day after the incident to be in compliance with the chain of command via informal resolution prior to filing grievance,

therefore my grievance should not be rejected...").  As indicated above, the grievance procedures require that the grievance be filed within thirty days from the date of the incident, even if the inmate has not received responses to his requests for informal resolution.  Plaintiff could have timely filed his grievance with an explanation that he had not yet received responses to his attempts at informal resolution, but he did otherwise.  Thus, as Plaintiff did not follow the required procedures, he did not properly exhaust his administrative remedies before filing this action.  Plaintiff's complaint is dismissed for failure to exhaust administrative remedies.

Further, even if Plaintiff had properly exhausted his administrative remedies, the claims should be dismissed.

### B.  Claims Against State of Connecticut and Judicial Marshals Service

Plaintiff has named as defendants the State of Connecticut, and its Judicial Marshals Service, a state agency.  *See Chance v. Machado*, No. 3"08-cv-774(CSH), 2009 WL 3416422, at *2 (D. Conn. Oct. 22, 2009) (acknowledging State of Connecticut Judicial Marshal Service as a state agency, or arm of the state).  It is well settled that the Eleventh Amendment and related principles of state sovereign immunity generally divest the federal courts of jurisdiction over lawsuits brought by private citizens against the State, any state government entities, and any state government officials in their official capacities.  *See generally Lewis v. Clarke*, ___ U.S. ___, 137 S. Ct. 1285, 1290—91 (2017); *T.W. v. New York State Bd. of Law Examiners*, 996 F.3d 87, 92 (2d Cir. 2021).  While it is true that the state may waive this immunity or Congress may abrogate it, Plaintiff alleges no facts suggesting that the State of Connecticut has waived its sovereign

immunity from suit in federal court.   Nor has Congress abrogated state sovereign immunity with the enactment of section 1983.  *See Salu v. Miranda*, 830 F. App'x 341, 347 (2d Cir. 2020) (citing *Quern v. Jordan*, 440 U.S. 332, 338-5 (1979)).

Further, although the Supreme Court of the United States has recognized an exception to Eleventh Amendment immunity that permits a federal court to grant an order of prospective injunctive relief against a state official for an ongoing violation of federal law, *Ex Parte Young*, 209 U.S. 123 (1908), that exception neither applies to a state, nor to a state agency.  *See Campbell v. City of Waterbury*, 585 F. Supp. 3d 194, 202—03 (D. Conn. 2022) (dismissing claims against arm of state, as *Ex Parte Young* is not applicable to claims against a state or state entity).

All claims against defendants State of Connecticut and Judicial Marshals Service, the first, second, and fourth causes of action, must be dismissed under 28 U.S.C. § 1915A(b)(2).

### C. <u>Claims Against Supervisory Defendants Cook, Buttricks, and Mulligan</u>

Plaintiff lists Commissioner Cook, Warden Buttricks or his successor, and District Administrator Mulligan or his successor, as defendants in the case caption, but he fails to include any allegations against them in his statement of facts.

To state a claim for supervisory liability, Plaintiff must "plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)).  Thus, Plaintiff must allege facts showing that defendants Cook, Buttricks, and Mulligan were personally aware of, and deliberately

disregarded, facts showing a violation of his constitutional rights. *See id.*

Plaintiff alleges no facts regarding any of these defendants. He appears to assume they are liable because of their positions. This is insufficient to state a plausible claim. Further, even if any defendant were aware of the facts of this case, "[a] supervisor's 'mere knowledge ...' is not sufficient because that knowledge does not amount[] to the supervisor's violating the Constitution." *Id.* at 616-17 (quoting *Iqbal*, 556 U.S. at 677). All claims against Defendants Cook, Buttricks, and Mulligan must be dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

### D. Claims Against Judicial Marshals Pugliares and Carr

The only claim asserted directly against Judicial Marshals Pugliares and Carr is the negligence claim in the fourth cause of action. The federal court's supplemental jurisdiction is governed by 28 U.S.C. § 1367(a), which provides that "district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." However, under section 1367(c), a "district court may decline to exercise supplemental jurisdiction over a claim under subsection (a) if ... the district court has dismissed all claims over which it has original jurisdiction...."

The court has dismissed all of Plaintiff's federal law claims. Thus, the court declines to exercise supplemental jurisdiction over his state law tort claim. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1996); *Giordano v. City of New York*, 274 F.3d 740, 754 (2d Cir. 2001) (citing cases).

14

### E. **Correctional and Medical Staff and Nurse Graham**

In his fifth cause of action, Plaintiff asserts claims against Walker Correctional staff for failing to ensure that the steps to the prisoner transport vehicle were safe before permitting him to use them.  In his sixth cause of action, he asserts deliberate indifference to medical needs claims against Walker Correctional staff and Nurse Graham for failing to take seriously his complaints of injury on the day of the accident.  In his seventh cause of action, he contends that the Department of Correction medical staff was deliberately indifferent to his medical needs by denying or delaying access to treatment.

Plaintiff does not include any correctional or medical staff members as defendants in the case caption.  As Federal Rule of Civil Procedure 10(a) requires that all parties be named in the case caption, none of these persons is a defendant in this case. Accordingly, the claims in causes of action five, six, and seven are subject to dismissal under 28 U.S.C. § 1915A(b)(1).

In addition, Plaintiff did not file this case until September 1, 2022, sixteen days before the statute of limitations on his claims would expire.  *See Thompson v. Rovella*, 734 F. App'x 787, 788-89 (2d Cir. 2018) (statute of limitations for filing a section 1983 action in federal court in Connecticut is three years).  Thus, if Plaintiff were to seek leave to amend his Complaint to include these defendants, the claims would be time-barred. *See Grace v. Rosenstock*, 228 F.3d 40, 53 (2d Cir. 2000) (an amendment can be futile, and therefore not allowed, if the claim to be added would be barred by the applicable statute of limitations), *cert. denied*, 532 U.S. 923 (2001).

**F. Claims under 42 U.S.C. §§ 1985, 1986, and 1988**

In addition to asserting claims under section 1983, Plaintiff states that he brings this action under sections 1985, 1986, and 1988. However, his claims are not cognizable under any of these statutes.

Section 1985 prohibits conspiracies. *See Harnage v. Dzurenda*, 2014 WL 3360342, at *2 (D. Conn. July 9, 2014). Section 1985(1) prohibits conspiracies to prevent federal officers from performing their duties. *Id.* Section 1985(2) prohibits conspiracies intended to deter witnesses from participating in state or federal judicial proceedings. *Id.* Neither section is applicable to the facts alleged.

Section 1985(3) prohibits conspiracies motivated by racial or otherwise class-based invidious discriminatory animus. *See Iqbal v. Hasty*, 490 F.3d 143, 176 (2d Cir. 2007), *rev'd on other grounds sub nom. Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Plaintiff does not allege such a motive underlying Defendants' actions. Thus, Plaintiff fails to state a plausible Section 1985(3) claim.

Section 1986 provides no substantive rights; it merely provides a remedy for the violation of Section 1985. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 222 n.28 (1970) (Brennan, J., concurring in part and dissenting in part). Thus, a prerequisite for an actionable Section 1986 claim is a cognizable Section 1985 claim. *See Brown v. City of Oneonta*, 221 F.3d 329, 341 (2d Cir. 2000), *overruled in part on other grounds by Gonzaga Univ. v. Doe*, 536 U.S. 273 (2002). As Plaintiff has not stated a plausible Section 1985 claim, he cannot state a cognizable Section 1986 claim.

Finally, Section 1988(a) provides that

16

> The jurisdiction in civil and criminal matters conferred on the district courts . . . shall be exercised and enforced in conformity with the laws of the United States, so far as such laws are suitable to carry the same into effect; but in all cases where they are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies . . . the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil or criminal cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the cause . . . .

42 U.S.C.A. § 1988(a).  This section does not provide an independent cause of action.  *See Moor v. Alameda Cty.*, 411 U.S. 693, 702-06 (1973).  Section 1988(b) provides for award of attorney's fees.  As a self-represented litigant, Plaintiff is not entitled to attorney's fees under Section 1988(b).  *See Kay v. Ehrler*, 499 U.S. 432, 435 (1991).

Any claims under Sections 1985, 1986, and 1988 are dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

## IV.   CONCLUSION

Each federal law claim is **DISMISSED** for failure to exhaust administrative remedies, or for the reasons stated herein.  The court declines to exercise supplemental jurisdiction over Plaintiff's state law claims, which are **DISMISSED** without prejudice.

Plaintiff filed a Motion to Amend the Complaint, ECF No. 12, seeking to add additional parties, but failed to attach a proposed Amended Complaint.  The Motion is **DENIED** without prejudice.  Plaintiff may file a motion to amend, attaching a proposed Amended Complaint that does not include claims the court has dismissed, on or before thirty (30) days from the date of this order.  If Plaintiff does not file an Amended Complaint within that timeframe, the case may be closed without further order from the court.

The Clerk of Court respectfully is directed to mail a copy of this Order to Plaintiff, please.

**IT IS SO ORDERED** at Hartford, Connecticut, this 26th day of July, 2023.

_____/s/_____
OMAR A. WILLIAMS
UNITED STATES DISTRICT JUDGE